**Daniel MILLAR, Plaintiff,**

v.

**BAY AREA RAPID TRANSIT DISTRICT, and Does 1–100, Inclusive, Defendant(s).**

**No. C 01–0818 WDB.**

United States District Court, N.D. California.

Nov. 15, 2002.

Jordan J. Yudien, Esq., Yudien & Associates, Walnut Creek, CA, for Plaintiff, Daniel Millar.

Thomas C. Lee, Esq., Ruth M. McIrvin, Esq., San Francisco Bay Area Rapid Transit District Legal Department, Oakland, CA, for Defendant, San Francisco Bay Area Rapid Transit District.

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS HIS FEDERAL CLAIMS AND GRANTING PLAINTIFF'S MOTION TO REMAND.**

BRAZIL, United States Magistrate Judge.

## I. INTRODUCTION

On September 27, 2002, plaintiff filed a brief styled, "Memorandum of Points And

Authorities In Support Of Plaintiff's Motion To Dismiss Federal Claims And Remand The Case To State Court, Or, In The Alternative, In Support Of Plaintiff's Motions To Permit Filing Of An Amended Complaint And To Vacate The Deadlines For Completing Expert Discovery, Hearing Dispositive Motions And To Continue The Trial Date." In this motion, plaintiff seeks to dismiss his federal claims, and, thereafter, to have this court remand his remaining claims to state court. If the Court denies his motion to remand, plaintiff moves, in the alternative, for an order permitting the filing of a third amended complaint and vacating the deadline for expert witness discovery, the deadline for hearing dispositive motions, and the trial date pending a decision by the California Supreme Court in *Colmenares v. Braemer Country Club, Inc.*, California Supreme Court Case No. S098895 (*"Colmenares"*.)

For reasons discussed at length below, the Court orders plaintiff's federal claims dismissed with prejudice and remands plaintiff's case to state court. Our decision to remand plaintiff's lawsuit renders moot his motions to continue the dates earlier set for completion of discovery and for trial. The Court's remand of plaintiff's case also leaves it without authority to entertain plaintiff's motion, brought in the alternative, for an order permitting plaintiff to file a third amended complaint.

## II. PROCEDURAL HISTORY

The procedural history pertinent to the Court's ruling on plaintiff's motions is as follows: On August 11, 2000, plaintiff Daniel Millar filed a Complaint against his employer, San Francisco Bay Area Rapid Transit ("BART") in the Superior Court of California for the County of Alameda. Complaint, filed August 11, 2000. The complaint alleged causes of action arising under state law for discrimination based on disability and on age, and for retaliation. *Id.* On January 25, 2001, plaintiff filed an amended complaint, adding claims under Title VII, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA".) Amended Complaint, filed January 25, 2001. On February 23, 2001, BART removed the case to federal court on the basis of federal question jurisdiction. Notice of Removal of Action Under 28 U.S.C. Section 1441(b) (Federal Question), filed February 23, 2001. Bart filed its answer on or about March 12, 2001. Answer of Defendant San Francisco Bay Area Rapid Transit to First Amended Complaint, filed March 12, 2001.

On July 8, 2002, plaintiff filed a second amended complaint adding allegations of discrimination based on events that allegedly occurred after he initially filed suit. Second Amended Complaint, filed July 8, 2002. Plaintiff's second amended complaint, the operative complaint at the time the instant motions were filed, contains claims for relief for disability discrimination and failure to reasonably accommodate under the California Fair Employment and Housing Act ("FEHA") (first claim for relief), disability discrimination and failure to reasonably accommodate under Title VII of the Federal Civil Rights Act of 1964, as amended, ("Title VII") and the ADA (second claim for relief), for age discrimination under FEHA (third claim for relief), for age discrimination under Title VII and the ADEA (fourth claim for relief), for retaliation under the FEHA (fifth claim for relief), for retaliation under Title VII, the ADA and the ADEA (sixth claim for relief), for discrimination and retaliation in violation of California public policy (seventh claim for relief), and, under California law, for breach of the covenant of good faith and fair dealing (eighth claim for relief.) *Id.*

The Court's involvement in this case has been limited to holding two Case Manage-

ment Conferences and issuing a pre-trial order.

## III. LEGAL ANALYSIS

### A. PLAINTIFF'S MOTION TO DISMISS HIS FEDERAL CLAIMS

Plaintiff first moves the Court for an order dismissing the federal claims in his Second Amended Complaint (the second, fourth, and sixth claims for relief.)[1] Although plaintiff failed to identify the Federal Rule under which he seeks dismissal of his federal claims, the Court has determined that plaintiff's request to dismiss these claims should be construed as a motion to amend under Rule 15(a). *See, e.g., Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir.1988); *Mgmt. Investors v. United Mine Workers of Am.*, 610 F.2d 384, 394–95 (6th Cir.1979); *see also* 8 Moore's Federal Practice, § 41.21[2] (Matthew Bender 3d ed.)

Analysis of a motion to amend under Rule 15(a) essentially consists of a balancing test in which factors for and against the requested amendment are weighed. The balancing is not conducted in a vacuum, however, but in the context of certain well established guiding principles. Generally, leave to amend should be freely granted—and leave should be denied only on a clear showing that competing considerations outweigh the general policy. Moreover, the law strongly favors applications of procedural rules that permit courts to render decisions on the merits. The effect of these general principles on the balancing we must conduct is to pre-

weight the scales at least moderately in favor of granting leave to amend.

■ Other factors that can weigh in favor of allowing amendment include: (a) avoiding piecemeal litigation and conserving the Court's and the parties' resources by resolving related matters in one proceeding, and (b) avoiding harm to the plaintiff that would be caused by denying leave to amend. Factors that could support denial of leave to amend include: (a) prejudice to the defendant (the most important single factor), (b) bad-faith motive on the part of the plaintiff (for example, use of the motion to postpone the trial date, impose additional expense on the opposing party, or gain additional leverage in settlement negotiations), (c) undue delay or dilatory conduct by the plaintiff, (d) futility of the proposed amendment, and (e) impact on judicial economy, judicial resources and the Court's ability to manage cases and control its dockets.

■ In the instant case, the general policies of avoiding piecemeal litigation and reaching the merits of cases favor allowing plaintiff to amend his complaint to delete his federal claims. In addition, plaintiff would suffer harm if the Court were to deny his motion to amend. If the Court were to deny plaintiff's motion to amend, his case could not be remanded to state court. Requiring plaintiff to litigate in federal court a case that would be based entirely on state law would: (1) deprive plaintiff of his chosen forum, (2) deny plaintiff the right to have California courts decide the issues of California law that govern his claims, and (3) deny plaintiff the use of California Code of Civil Procedure section 998 as a settlement tool.[2]

---

1. In his briefs, plaintiff seeks a dismissal without prejudice. At oral argument, however, plaintiff's counsel stipulated that, if the Court were to dismiss plaintiff's federal claims, the dismissal would be with prejudice.

2. Both federal and California law allow a *defendant* to recover costs if he makes a settlement offer before trial, the plaintiff refuses to

settle, and the plaintiff obtains a trial judgment that is worth less than the settlement offer. *Compare* Fed.R.Civ.P. 68 *with* Cal. Code Civ.Proc. § 998(c). California law also permits a *plaintiff* to recover costs if he makes a settlement offer before trial, the defendant refuses to settle, and the plaintiff obtains a trial judgment that is worth more than the

The second of these three considerations is especially weighty in the specific circumstances of this case. The court and the parties have been waiting for some time for a decision by the California Supreme Court in *Colmenares*. In that case the California high court is expected to decide whether the current version of FEHA applies to conduct that occurred before the 2000 amendments. The Court's answer to that question will have a significant impact on the character and strength of plaintiff's claims in this litigation. Moreover, however the high court rules, major issues about how to construe and apply the general principles the court announces will remain to be litigated. These will be difficult, cutting edge issues with potentially far-reaching implications for many other California litigants. In these circumstances, it is unusually important to permit California courts to address these significant questions of California law in the first instance. By retaining jurisdiction over this case, this federal court, which is not an authoritative arbiter of the meaning of California law, would deprive plaintiff of his right to have the courts of his state address these significant matters. We also would be depriving our sister courts in California, who are much better versed in California law and much less likely to err in construing it, of a potentially important and useful opportunity to develop the implications of whatever general announcements the California Supreme Court makes in *Colmenares*.

Although we could locate no authority for the proposition that the loss of an opportunity for remand is a harm that can be considered in a Rule 15(a) analysis, we believe that such harm is a reality in a case like this that should be considered. Accordingly, weighing in favor of granting plaintiff's motion to amend is the significant harm he will suffer, as described above, if his motion is denied, as well as the general policies which direct the Court to freely grant leave to amend.

The first factor to be weighed on the side of denying leave to amend is the potential prejudice that would be suffered by defendant if plaintiff's motion is granted. One source of potential prejudice to the defendant is the possibility of delay in obtaining a trial date. Delay of the trial date (which had been set for February of 2003), however, will occur regardless of the Court's decision on plaintiff's motion to amend, as the Court would continue the trial date in any event until after the California Supreme Court issues its opinion in *Colmenares*. No date for oral argument in that case having been set, it appears that we would postpone the trial date in the case at bar for at least several months, even if we prohibited the proposed amendment.[3] Therefore, defendant will not actually suffer prejudice stemming from potential delay of the trial date.

settlement offer. Cal.Code Civ.Proc. § 998(d). Under federal law, however, an equivalent procedure is not available to plaintiffs. Fed.R.Civ.P. 68. Therefore, if this entirely state law case were to remain in federal court, only the defendant would be able to take advantage of the settlement encouraging procedures provided in Federal Rule of Civil Procedure 68. If this state law case proceeds in a California court, by contrast, the plaintiff (as well as the defendant) will be able to take advantage of the settlement encouraging procedures provided in California Code of Civil Procedure section 998 ("the 998 procedures"). The ability to invoke the 998 procedures can be a matter of substantial economic benefit to a plaintiff—a benefit wholly inaccessible—even in an identical case—in federal court.

3. Defendant has stated that it does not oppose continuing the trial date. Defendant San Francisco Bay Area Rapid Transit's Opposition To Plaintiff's Motion To Remand And To Amend Complaint, filed October 7, 2002, ("Opposition") at 5:5–10.

Additional sources of potential prejudice to the defendant could, in theory, include being required to 're-do' percipient discovery, expert discovery, motion and settlement work. The amendments that plaintiff proposes, however, would reduce rather than expand the scope of this case—so no new work would be required of defendant. Moreover, the reality is that the work defendant has done in exploring plaintiff's federal claims overlaps significantly if not completely with the work it would have had to complete if plaintiff had pursued only his state claims throughout the course of this litigation. Therefore, actual prejudice from this theoretically possible source is essentially non-existent.

We also must consider plaintiff's apparent dilatoriness in bringing the instant motion, and the related fact that he apparently neglected earlier opportunities to amend his complaint. Not surprisingly, plaintiff's counsel asserts that he did not *unduly* delay in bringing this motion, and that he had a reasonable explanation for waiting twenty months after removal to so do. In his briefs and at oral argument, plaintiff's counsel suggested that he had not moved earlier to dismiss the federal claims because he feared that his state law claims might be vulnerable to dismissal because of some "potential procedural irregularity." He further explained that it was not until a recent mediation hosted by a state court judge that he was reassured that the "irregularity" would not result in loss of the state law claims. Because plaintiff's counsel declined to identify the alleged possible "irregularity" we are in no position to assess the justifiability of his concern or to determine whether he should have been able to allay his fears by conducting research or consulting with others many months ago. Given these shortfalls in counsel's explanation, we are constrained to conclude that this factor weighs in favor of defendant's opposition to the

motion. We quickly add, however, that because the delay has caused no substantial harm or prejudice to defendant, this factor contributes little weight to defendant's side of the scales.

Other factors the Court may consider when contemplating denial of a motion to amend include (1) whether bad faith or some other improper purpose animate the motion, and (2) considerations of judicial economy. Neither is weighty in this case. There is no evidence of bad faith on the part of the plaintiff. Judicial economy is not a serious factor because the Court has heard no motions, nor done any other significant work in this case which amendment would render wasted.

Taking all pertinent factors into account, the scales tip in favor of granting plaintiff's motion to amend. It follows that the Court DISMISSES plaintiff's federal claims with prejudice.

### B. PLAINTIFF'S MOTION TO REMAND

Plaintiff advances two theories in support of his motion to remand. First, he argues that dismissal of his federal claims deprives the Court of jurisdiction over his state claims, and, therefore, that the court must remand the state claims (the mandatory remand theory.) Second, he argues that even if the Court continues to have jurisdiction over his state claims, it should remand those claims based on principles of fairness, judicial economy, and comity (the permissive remand theory.)

#### 1. Mandatory Remand

Plaintiff first argues that the Court must remand his lawsuit following dismissal of his federal claims, because dismissal of these claims will render the Court without subject matter jurisdiction. He bases this argument on 28 U.S.C. § 1447(c) ("section 1447(c)"), which states, in perti-

nent part, that "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded."

For decades it has been understood that removability is analyzed on the basis of the pleadings on file at the time of removal. *See, e.g., Pullman Co. v. Jenkins* 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939); *Carnegie–Mellon Univ. v. Cohill* (1988) 484 U.S. 343, 357, 108 S.Ct. 614, 622–23, 98 L.Ed.2d 720; *Hill v. Rolleri* 615 F.2d 886, 889 (9th Cir. 1980). It also has been understood, as a corollary to this rule, that if a case was properly removed, a plaintiff cannot thereafter oust the federal court of jurisdiction by unilaterally changing the case so as to destroy the ground upon which removal was based. *Hill,* 615 F.2d at 889. Courts uniformly have held that if a claim "arising under" federal law existed at the time of removal, the federal court has discretion to retain jurisdiction to adjudicate pendent state claims even if at some point the federal claim has been dropped. *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. 614; *Nishimoto v. Federman–Bachrach & Associates,* 903 F.2d 709, 715 (9th Cir.1990.) This longstanding rule is based on the policy that judicial economy, convenience, fairness and comity will sometimes best be served by the retention of jurisdiction by the federal court, particularly in instances where the trial date is imminent or where the federal court has performed a substantial amount of legal analysis that would need to be repeated by the state court if the case were remanded. *See, e.g., Har-*

*rell v. 20th Century Ins. Co.,* 934 F.2d 203, 205–06 (9th Cir.1991.)

Most of the cases that insisted that a plaintiff could not oust a federal court of jurisdiction by dismissing his federal claims were based on pre–1988 versions of section 1447(c). *See, e.g.,* the discussion of authorities in *Bailey v. Wal–Mart Stores,* 981 F.Supp. 1415, 1416 (N.D.Ala.1997.) In 1988, Congress amended section 1447(c) as part of the Judicial Improvements and Access to Justice Act of 1988.[4] In some courts' eyes, the amendment of section 1447(c) has introduced ambiguity into this doctrinal arena. At least one court has expressly held, and other opinions may imply, that the amendment to section 1447(c) eliminated the discretion of federal courts to retain jurisdiction over pendent state claims after the federal claims have been dismissed from a lawsuit. *Id.*

The Ninth Circuit, however, has not embraced this view. As recently as 1998 our Court of Appeals reiterated its opinion that jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments. *See Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc. et al.,* 159 F.3d 1209, 1213 (9th Cir.1998):

Finally, Sparta directs our attention to the amended complaint it filed after removal in which most references to exchange rule violations were deleted. This is of no moment to us, however, for jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent

---

4. Prior to 1988, subsection (c) read as follows:

> If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order payment of just costs.

From November 19, 1988, until today, subsection (c) has read as follows:

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorneys fees, incurred as a result of the removal.

amendments... Because of this rule, *a plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based.*

(emphasis added; internal citations omitted.) This Court is bound by the Ninth Circuit's decision in *Sparta.* We also note, though, that even if we were not bound by the Ninth Circuit's ruling on this issue, we would reach the same result based upon our examination of the authorities cited by plaintiff and additional authority located through our independent research.

■ In his brief, plaintiff cites *Baldwin v. Safeway Stores,* 1999 WL 129539 (N.D.Cal.1999), in support of the argument that section 1447(c) requires remand following the dismissal of his federal claims. We acknowledge that the result in *Baldwin* appears to support plaintiff's argument, but we are not sure what the full implications or the boundaries of *Baldwin* are—in part because the court elected not to detail the analytical route it followed and did not purport to set forth completely the case development setting in which it was ruling. Moreover, it is an accessible interpretation of *Baldwin* that the motion to remand and motion to dismiss the federal claims were presented to the court immediately after the removal petition, for all practical purposes converting *Baldwin* to a 1447(c) case, and, therefore, raising none of the concerns that have informed the *Carnegie–Mellon* line of authorities.

We also acknowledge the opinion of the United States District Court of the Northern District of Alabama in *Bailey v. Wal–Mart Stores,* 981 F.Supp. 1415 (N.D.Ala.1997.) In *Bailey,* the court expressly ruled that the 1988 Congressional amendment of section 1447(c) altered the rule that events occurring subsequent to removal cannot oust the district court's jurisdiction. Instead, according to the *Bailey* court, if changes in plaintiff's con-

tentions following removal result in a loss of subject matter jurisdiction, "no discretion remains in the federal court to retain jurisdiction and ... remand becomes automatic." *Id.* at 1416–17. The court in *Bailey* based its ruling on the belief that the Congressional amendment of section 1447(c) was a response to the *Carnegie–Mellon* opinion, discussed above, and to the United States Supreme Court case of *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). The *Bailey* court states that, although it had been unable to find any legislative history revealing the Congressional thinking behind the amendment, it seemed "logical" that its passage was a response to the *Carnegie–Mellon* and *St. Paul Mercury* cases. *Bailey* 981 F.Supp. at 1416.

We disagree with the court's reasoning in *Bailey.* First, we have located legislative history of the 1988 amendment to section 1447(c) that we believe offers some insight into Congressional thinking on this subject. The following passage appears in the House Report on the Judicial Improvements And Access to Justice Act (which contained the 1988 amendment to section 1447(c)):

Subsection (c) amends 28 U.S.C. 1447(c) and adds a new subsection (e). Section 1447(c) now appears to require remand to state court if at any time before final judgment it appears that the removal was improvident. So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between two courts that each have subject matter jurisdiction. There is also some risk that a party who is aware of a defect in removal procedure may hold the defect in reserve as a means of forum shopping if the litigation should

take an unfavorable turn. The amendment provides a period of 30 days within which remand must be sought on any ground other than lack of subject matter jurisdiction. The amendment is written in terms of a defect in "removal procedure" **in order to avoid any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded.**

(emphasis added.) H.R. Report No. 100–889 at 72 (1988). We interpret the last sentence of the paragraph quoted above as evidence that Congress intended to continue to permit federal courts to exercise discretion in deciding whether to remand a plaintiff's state claims or retain them after his federal claims are dismissed. We also find it very doubtful that Congress would overrule without comment thirty years of jurisprudence.

We have considered another line of cases that might give us brief analytical pause in the section 1447(c) arena. There is some language in *Fent v. Oklahoma Water Resources Board*, 235 F.3d 553 (10th Cir.2000) that seems to suggest that, after the amendment of section 1447(c) in 1988, courts have no discretion to exercise jurisdiction over a removed case once it becomes clear that no ground for federal jurisdiction remains. *Fent* 235 F.3d at 557–58. In support of its view, the *Fent* court cites the cases of *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991); *Roach v. W. Va. Regional Jail & Corr. Facility Auth.*, 74 F.3d 46 (4th Cir.1996); *Coyne v. American Tobacco Co.*, 183 F.3d 488 (6th Cir.1999); *Bromwell v. Mich. Mut. Ins. Co.*, 115 F.3d 208 (3rd Cir.1997); and *Smith v. Wis. Dept. of Agric., Trade & Consumer Prot.*, 23 F.3d 1134 (7th Cir. 1994).

After careful consideration, we find the *Fent* line of cases inapposite for two reasons. First, these cases focus on a district court's authority to dismiss state claims rather than to remand them, not on the authority to retain jurisdiction instead of remanding. *See, e.g., Fent*, 235 F.3d 553, 558; *Coyne*, 183 F.3d 488, 496. Second, in all of these cases it appears that the courts concluded that federal subject matter jurisdiction had never matured in the first place. Thus, there does not appear to be any real tension between these authorities and the decades old proposition that whether a federal court has subject matter jurisdiction is to be determined by the pleadings and circumstances at the time of removal—not by subsequent manipulations of pleadings or changed real world circumstances. *See, e.g., Fent*, 235 F.3d 553, 558; *Coyne*, 183 F.3d 488, 496.

The case at bar is clearly distinguishable from *Fent* and the authorities on which it draws. Plaintiff's state claims are part of the same case or controversy as his federal claims. Once plaintiff chose to include these federal claims in his First Amended Complaint, and defendant elected to remove his lawsuit to federal court, this Court had federal question jurisdiction over plaintiff's federal claims as well as supplemental jurisdiction over his state claims.

Having considered and either distinguished or rejected all of the authority suggesting that the 1988 amendment to section 1447(c) supersedes the holding in the *Carnegie–Mellon* line of cases, we find that *Carnegie–Mellon* and its progeny continue to govern our jurisdictional analysis. Accordingly, our decision to follow the Ninth Circuit's decision in *Sparta* is based not only on our duty to so do, but also on our agreement with the result reached by the *Sparta* court. Accordingly, plaintiff's theory of mandatory remand fails.

## 2. Permissive Remand

█ Plaintiff next argues that, even if the Court is not precluded from exercising jurisdiction, it should nevertheless decline to exercise such jurisdiction based on principles of fairness, judicial economy and comity (the permissive remand theory.) Following dismissal of a plaintiff's federal claims, the Court must decide whether to retain his supplemental state claims or remand them to state court. *See generally* Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial, at ¶ 2:156 (TRG 2002.) "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Associates* 114 F.3d 999, 1001 (9th Cir.1997) (*en banc*), (*citing Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.) Factors the Court should consider when deciding whether to retain jurisdiction over supplemental state claims include judicial economy, convenience, fairness, and comity. *Acri*, 114 F.3d at 1001. In deciding whether to retain jurisdiction or remand, the court also may consider whether plaintiff has engaged in "manipulative tactics"—i.e., is dismissing federal claims in an exercise in unprincipled forum shopping. *See, e.g., Carnegie–Mellon*, 484 U.S. at 357, 108 S.Ct. 614.

█ We begin our analysis by turning to the factor of judicial economy. "Judicial economy [is] the essential policy behind the modern doctrine of pendent jurisdiction". *Graf v. Elgin, J. & E. Ry.*, 790 F.2d 1341, 1347 (7th Cir.1986.) This Court has expended only modest effort in supervising this case. There were no motions of any kind filed by either plaintiff or defendant prior to the motions that are the subject of this opinion and order. The Court's in-volvement in this case has been limited to holding two Case Management Conferences and issuing a pre-trial order. The Court has not performed any substantive legal analysis that will need to be duplicated or re-done by the state court. Accordingly, the factor of judicial economy weighs in favor of remand.

The factor of comity also weighs strongly in favor of remand. Having successfully moved to dismiss his federal claims, plaintiff now proceeds exclusively on his state claims. Plaintiff brings most of his state-law claims under FEHA. Although many portions of FEHA are informed by principles of federal ADA jurisprudence, *see, e.g., Haynal v. Target*, 1996 WL 806706, at *2 (S.D.Cal.1996), the California legislature's amendments to FEHA in 2000 potentially mark a substantial departure from the analogous standards of the ADA. *Colmenares v. Braemar Country Club*, 89 Cal.App.4th 778, 107 Cal.Rptr.2d 719( 2001) (*under review by the California Supreme Court*). If the California Supreme Court rules that the 2000 FEHA amendments apply retroactively, plaintiff's state-law claims may be decided by state-law standards that differ markedly from those contained in the ADA.[5] If the 2000 FEHA amendments apply to plaintiff's claims, it is clearly better policy to have state courts, rather than federal courts, decide how those amendments should be interpreted. As plaintiff points out in his moving papers, many issues under the 2000 FEHA amendments will be issues of first impression, and if such issues are to work their way up through the appellate courts, comity dictates that it should be California appellate courts, not federal courts, that resolve such issues. Even if the California Supreme Court decides that the 2000

---

5. We offer no opinion as to the applicability of the 2000 FEHA amendments to plaintiff's claims.

FEHA amendments are not retroactive, it is still preferable as a matter of comity (respect for our sister state institutions) for state court judges to apply state law to plaintiff's state-law claims. Accordingly, regardless of the decision in *Colmenares,* the factor of comity weighs heavily in favor of remand.

The factors of convenience and fairness cut markedly in neither direction. Both forums are equally convenient to the parties because both the federal forum and the state forum in this particular case are located in the city of Oakland. The case, therefore, will be tried in Oakland regardless of the Court's decision on plaintiff's remand motion.

As to fairness, a state forum will provide just as fair a proceeding as a federal one. Moreover, given the need to postpone further case development until the California Supreme Court issues its opinion in *Colmenares,* it is not likely to take longer to get to trial in the state court than it would here. In some cases, a remand to state court might open the door to a new round of discovery, a development that might be unfair to defendant and a windfall to plaintiff. In his brief, however, plaintiff claims that a new round of discovery is not likely, since discovery is presently on track to be completed by the end of October, 2002. Defendant does not contend that remand, by itself, would trigger a need or an entitlement to any additional discovery.[6] Moreover, whether any significant additional discovery could be justified likely will depend on the ruling in *Colmenares*—and the considerations triggered by that ruling will be identical in state and federal court. Nor is there any basis for assuming that this Court would be any

more protective than a state judge of all parties' real fairness interests.

Finally, the Court is permitted to consider obvious efforts to forum shop when ruling on a motion to remand. *Carnegie–Mellon,* 484 U.S. at 357, 108 S.Ct. 614. In his papers, plaintiff relies on the case of *Baddie v. Berkeley Farms,* 64 F.3d 487 (9th Cir.1995), for the proposition that district courts may not consider forum manipulation as a factor in the remand analysis. We find plaintiff's reliance on *Baddie* misplaced for two reasons. First, although the *Baddie* ruling occurred in the context of a remand motion, the issue addressed was the propriety of an attorney fee award entered against the plaintiffs in connection with their motion to remand. In *Baddie,* plaintiffs amended their complaint to delete federal causes of action and moved to remand following the defendants' removal of their employment discrimination action. *Baddie,* 64 F.3d at 489. The District Court hearing the remand motion granted the motion to remand, but also awarded defendants their attorneys fees incurred between removal and remand pursuant to 28 U.S.C. section 1447(c) ("section 1447(c)"), finding that both removal and remand had been precipitated by plaintiffs' manipulative pleading practices. *Id.* Plaintiffs appealed the fee award, but did not challenge that portion of the judge's order granting their remand motion. *Id.* The appellate court found that section 1447(c) did not authorize an award of fees against plaintiffs where both removal and the subsequent remand were proper. The court also found that plaintiffs' conduct had not been manipulative, and that, therefore, even had the fee award been authorized by section 1447(c), the judge's decision to

---

**6.** In opposing plaintiff's alternative motion to amend his complaint by changing or "clarifying" some of the key factual allegations (a motion on which we decline to rule), defendant opines that a new round of discovery

might have to be conducted if plaintiff were permitted to change critical factual contentions. These are matters the state court will address in due course.

grant fees in those circumstances was erroneous. *Id.* at 490.

Second, and more importantly, the *Baddie* court did not hold that forum manipulation should not be considered in a remand analysis. Rather, the *Baddie* court found that the plaintiffs in that case had not engaged in improper forum manipulation. The Court based this finding, in part, on the timeliness of plaintiff's motion, reasoning that plaintiffs moved for remand "with all due speed" after removal. *Id.* at 491. In the instant case, in contrast, it is not at all clear that plaintiff moved to remand "with all due speed" following removal. Instead, he waited for over twenty months. Given that major difference, plaintiff can cull virtually no support for his position from *Baddie*.

We are concerned that there may have been an element of forum manipulation in plaintiff's remand motion, but it is far from clear that any improper motive is the driving force here. It was responsible lawyering by plaintiff's counsel not to dismiss the parallel federal claims if the state claims were vulnerable to dismissal on non-substantive grounds. And it clearly is legitimate to want state judges to address claims based on state law—especially when that law is difficult and unsettled. Thus, while concern about forum manipulation deserves some play in our analysis, it is not clear that this factor weighs heavily in defendant's favor.

Having considered all of the pertinent factors, we hold that the scales tip decidedly in favor of remand. We therefore GRANT plaintiff's motion to REMAND this now wholly state law case to state court.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS plaintiff's motion to amend his Second Amended Complaint to delete his federal claims and REMANDS this case to state court. Plaintiff's federal claims are dismissed with prejudice.

With entry of the remand order, plaintiff's case is DISMISSED, without prejudice, from this court's docket. Accordingly, the court VACATES the pending trial date as well as the discovery and dispositive motion cut-off dates.

The Court's dismissal of this case leaves it with no authority to entertain plaintiff's motion to amend his Second Amended Complaint to clarify certain legal theories and to change certain factual allegations.

IT IS SO ORDERED.