Saeid **MOHEBBI**, Plaintiff,

v.

Mahnaz **KHAZEN**, et al., Defendants.

Case No. 13–cv–03044–BLF

United States District Court,
N.D. California,
San Jose Division.

Signed June 23, 2014

Aria Vatankhah, Aria Law Group PLC, Palo Alto, CA, for Plaintiff.

Edward Gartenberg, Gartenberg Gelfand Hayton & Selden LLP, Los Angeles, CA, Ray Edwin Gallo, Dominic R. Valerian, Gallo LLP, San Rafael, CA, for Defendants.

[Re: ECF Nos. 34, 48]

**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; (2) GRANTING PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT**

BETH LABSON FREEMAN, United States District Judge

Plaintiff Saeid Mohebbi ("Plaintiff" or "Mohebbi") brings this First Amended Complaint ("FAC") against Defendants Mahnaz Khazen, Michael Shadman, Violet Parvarandeh, Pirooz Parvarandah, and Stacey Conti (collectively, "Individual Defendants"), as well as U.S. Immigration Investment Center LLC ("USIIC"), USIIC LLP, and USIIC 1 LP (collectively, "USIIC Defendants"), for twenty-three causes of action, including claimed violations of federal and state securities laws, fraud, false advertising, conversion, unjust enrichment, and common law torts. These claims arise out of a contractual investment relationship entered into between the parties. Plaintiff alleges that, in exchange for Defendants' assistance in applying for a federal EB–5 immigration visa, he invested over $1 million in a partnership. Plaintiff alleges that Defendants fraudulently induced this investment and failed to comply with their obligations pursuant to the contract, and seeks rescission of the agreement, damages, including punitive damages, and attorneys' fees.

Defendants move to dismiss the FAC on two grounds: (1) that the claims alleged in the Complaint are subject to an arbitration agreement, and thus not appropriately adjudicated by the district court, and (2) that each of Plaintiff's causes of action fails to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). In response, Plaintiff both opposes the Motion to Dismiss and seeks leave of Court to file a Second Amended Complaint ("SAC"). In Plaintiff's motion, he requests leave of court to withdraw five causes of action from his FAC, allege four new causes of action, and allege new facts regarding the causes of action that remain. (ECF 50) Defendants opposed this request. (ECF 53) Pursuant to Civil Local Rule 7–1, the Court finds the Motion to Amend to be appropriate for determination without oral argument. Civil L–R 7–1(b).

Having reviewed the briefing and oral argument of the parties, as well as the relevant case law, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss. The Court GRANTS Plaintiff's Motion for Leave to Amend the Pleadings, pursuant to the terms of this Order.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed its Complaint on July 2, 2013. (ECF 1) Defendants filed a Motion to Dismiss on August 7, 2013. (ECF 19) Plaintiff elected to file a First Amended Complaint on August 28, 2013, naming the same Defendants. (ECF 29) Defendants filed a second Motion to Dismiss ("Motion") on September 11, 2013. (ECF 34) Plaintiff filed an Opposition on September 25, 2013 (ECF 37) Defendants replied on October 2, 2013. (ECF 39)[1]

Plaintiff further filed a Motion to Amend/Correct the Pleadings, seeking to file a Second Amended Complaint, on April 23, 2014. (ECF 50) Defendants responded on May 7, 2014. ( ECF 53) That same day, Plaintiff filed a Motion to Shorten Time in which to hear the Motion for Leave to Amend. (ECF 54) After briefing, the Court denied this Motion. (ECF 61) Plaintiff filed his Reply to Defendants' Opposition on May 14, 2014. (ECF 62)

### B. Factual Allegations in the FAC

Plaintiff is a Farsi-speaking Iranian citizen who resides in California. (FAC, ECF 29 ¶ 8) Defendants Khazen, Shadman, Violet Parvarandeh, and Pirooz Parvarandah are individuals who reside in California. (Id. ¶¶ 12–15) Defendant Conti is an individual who resides in Montana. (Id. ¶ 16) Defendant USIIC LLC is a Delaware corporation with its principal place of business in California. (Id. ¶ 9) Defendants USIIC LLP and USIIC 1 LP are partnerships organized under Delaware law with principal places of business in California. (Id. ¶¶ 10–11)

Plaintiff's FAC arises out of a series of interactions with the Individual Defendants, and two contractual agreements entered into with USIIC LLC. Plaintiff alleges that Defendants, through fraud and misrepresentations, induced Plaintiff into making investments worth over $1 million in two partnership entities, in exchange for Defendants' assistance in navigating federal visa procedures in order to obtain permanent residency and citizenship in the United States. (FAC, ECF 29 ¶¶ 19–22). In order to best understand the Plaintiff's Complaint, a chronological description of his interactions with the Defendants is most illustrative.

In 2012, Plaintiff, who was interested in seeking permanent residency in the United States, learned about the EB–5 Immigrant Investor Visa Program via Farsi language satellite advertisements. (Id. ¶ 27) This program is designed for foreign citizen investors, and permits a foreign national to qualify for a green card, provided that individual invests a certain amount of money (either $500,000 or $1,000,000, depend-

---

1. Defendants re-filed its Motion and Reply upon the reassignment of this case to the undersigned Judge. For purposes of the case's procedural history, however, the Court considers the initial filing dates to be operative. Further, the re-filed Motion to Dismiss (ECF 48) looks to have been filed in error—Defendants' numbering of the causes of action are incorrect (for example, citing to Plaintiff's common law fraud claims as the "Sixth, Seventh, Eighth, and Ninth Causes of Action" when they are numbered the twelfth through fifteenth causes of action in the FAC). (ECF 48 at i, 10–12) When citing to the arguments made in the Motion to Dismiss, the Court considers the original document, at ECF 34, to be the operative pleading.

ing on certain factors) in the United States. Plaintiff was thereafter shown a video produced by Defendant USIIC, in which it described the ways in which USIIC could assist foreign nationals in applying for the EB–5 program and investing in the United States. (*Id.*) Plaintiff contacted USIIC in March 2012, (*id.*), and met in person with the CEO of USIIC, Defendant Khazen, during a trip to the United States in April 2012. (*Id.* ¶¶ 28–29) During this meeting, Plaintiff was given USIIC promotional materials and was told about various "low-risk" investment opportunities, (*id.* ¶ 29), and alleges that Defendant Khazen informed him that USIIC was a United States Customs and Immigration Services ("USCIS") approved "EB–5 Regional Center." (*Id.* ¶ 29) It was during this meeting that Plaintiff initially expressed interest in investing with USIIC so as to qualify for an EB–5 Visa. (*Id.*) In June of 2012, Plaintiff received correspondence from Khazen that encouraged him to transfer funds to USIIC. (*Id.* ¶ 30) Then, in July of 2012, Plaintiff met with Khazen and Shadman in Dubai, a meeting in which Plaintiff alleges he was presented with information again stating that USIIC was an approved EB–5 regional center "with its foundation in banking." (*Id.* ¶ 32)

On July 22, 2012, Plaintiff was presented with an "Engagement Agreement," (ECF 29–3 at 13–18) (hereinafter "July 22 Agreement"), which outlined the terms of the relationship between Defendants and Plaintiff, including, among other things, that Defendants would seek out investment opportunities for Plaintiff that were compliant with the requirements of the EB–5 Visa Program. (FAC, ECF 29 ¶ 32) Plaintiff acknowledges that he signed this agreement, (*id.*), despite it being in English and Plaintiff being a native Farsi speaker who understood and spoke little English himself. (*Id.* ¶ 36) Plaintiff alleges that he asked Defendant Khazen to explain the contents of the document, which Khazen did in "five minutes in Farsi." (*Id.*) Plaintiff further alleges that Khazen did not inform Plaintiff that the contract contained an arbitration provision. (*Id.*)

In August 2012, Plaintiff was sent an email, in Farsi, from Defendant Shadman, stating that Plaintiff needed to transfer $1,000,000 to USIIC in order to be eligible for the EB–5 Visa program. (ECF 29 ¶ 34) Plaintiff states that Shadman's email claimed an August 15 deadline for the transfer of funds so that Plaintiff could be processed in the "first group" of green card applicants. (*Id.* ¶ 34) Plaintiff, acting on the information provided in Shadman's email, transferred $600,000 to Defendants on August 16, 2012. (*Id.*)

On August 27, 2012, Plaintiff received an email from Khazen, written in English, which stated that USIIC's Regional Center status was "pending." (*Id.* ¶ 36) Plaintiff received a second version of this email, which was translated into Farsi by a USIIC employee, Maryam Karimaneh. (*Id.*) That same day, Plaintiff received an email, also in Farsi, from Khazen, which stated that Plaintiff could not be provided with information about the pending Regional Center approval or the bank in which his money had been invested. (*Id.*) Plaintiff's concerns about these facts caused him to travel to the United States on a six-month tourist visa beginning in September 2012. (*Id.* ¶ 37) During this visit, Plaintiff met with Defendants Violet and Pirooz Parvarandah, who he alleges personally reassured Plaintiff that his funds had been properly invested. (*Id.*) After this meeting, on September 24, 2012, Plaintiff transferred an additional $480,000 to USIIC's escrow account, bringing his total investment to $1.08 million. (FAC, ECF 29 ¶ 37)

On September 27 2012, Plaintiff, along with Khazen and Karimaneh, met with attorneys at Fragomen, Del Ray, Bernsen & Loewy, LLP ("Fragomen"), an immigration law firm, to discuss his EB–5 application. (*Id.*) After that meeting, Plaintiff again spoke with Violet Parvarandah, who informed Plaintiff that an investment contract was being drafted, and that, were to Plaintiff sign that contract, "he would receive a 50% stake in the banks that USIIC had invested in." (*Id.* ¶ 39)

On October 3, 2012, Plaintiff signed a second agreement, an "Investment Questionnaire and Subscription Agreement," which granted him a "50% stake in USIIC's regional center." (ECF 29 ¶ 40; ECF 29–4 Exh. 17) (hereinafter "October 3 Agreement"). Plaintiff alleges that he believed, at the time of signing the October 3 Agreement, that he was being given a fifty percent interest in *every* bank in which USIIC had invested, such that the investment would qualify him for the EB–5 Visa. (ECF 29 ¶ 40) Plaintiff alleges that Khazen and others told him this was the case, in Farsi, despite the contract, in English, saying otherwise, (*id.* ¶¶ 40, 42), and that he "felt pressured" to sign the document, though he could not read it, as it was written in English. (*Id.* ¶ 40) Plaintiff alleges he was not provided a translated version of the document. (*Id.* ¶ 42)

In December 2012, Plaintiff alleges that he was concerned about his application status for an EB–5 Visa, and that his inquiries with USIIC were going unanswered. (*Id.* ¶ 45) At this time, and for the first time since he began interactions with Defendants, Plaintiff employed his own bilingual translator, in order to speak directly with his immigration attorney at Fragomen. (*Id.*) Plaintiff alleges that it

was only after this conversation that he for the first time realized that USIIC was not an approved EB–5 Regional Center, and instead only had a pending application for such a designation, that he had not directly invested in regional banks as required under the EB–5 program, and that his application for a visa had not yet been submitted to USCIS. (*Id.*) At this time, he instructed his attorney to cease his application for an EB–5 visa, (*id.*) and soon thereafter commenced the instant action.

Based on the facts above, Plaintiff asserts twenty-two causes of action[2] related to various alleged violations of federal and state securities laws, fraud, civil RICO, conversion, unfair business practices, and civil tort claims. In Plaintiff's Motion for Leave to Amend, he states that he will "voluntarily withdraw" five of the claims brought in the First Amended Complaint if provided the opportunity to amend. (ECF 50)

Plaintiff seeks relief in the form of damages, including punitive damages, an injunction pursuant to California Business & Professions Code § 17200, pre-judgment interest, and attorneys' fees. (FAC, ECF 29 at 42–43)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

#### 1. General Requirements

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of his complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this require-

---

**2.** Plaintiff's Twenty–Third Cause of Action, for Rescission of the Arbitration Agreement, is discussed at length below, but is appropriate-

ly styled as a prayer for relief, and not an independent Cause of Action.

ment can be dismissed pursuant to Rule 12(b)(6). In interpreting Rule 8(a)'s "short and plain statement" requirement, the Supreme Court has held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard does not ask the Plaintiff to plead facts that suggest he will probably prevail, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir.2008). The Court is not, however, forced to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Kane v. Chobani, Inc.*, 973 F.Supp.2d 1120 (N.D.Cal.2014) (citing *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir.2011)).

### 2. Fraud Pleadings Under Rule 9(b)

■ When a party pleads a cause of action for fraud or mistake, he is subject to the heightened pleading requirements of Rule 9(b). "In alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Rule 9(b) demands that the circumstances constituting any alleged fraud be plead "specific[ally] enough to give defendants notice of the *particular misconduct* ... so

that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir.2009) (citing *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)) (emphasis added). Claims of fraud *must* be "accompanied by the who, what, when, where, and how of the misconduct alleged." *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997).

### 3. Pleading Violations of § 10b of the Securities Exchange Act

■ Any claim brought under Section 10b of the Securities Exchange Act of 1934 must, in addition to the general heightened pleading requirements for fraud, also meet the pleading requirements of the Private Securities Litigation Reform Act ("PLSRA"). To survive a Rule 12(b)(6) motion to dismiss, a claim under Section 10b must "plead with particularity *both falsity and scienter*." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir.2001) (emphasis added). Plaintiff must "specify each statement alleged to have been misleading, the reasons why the statement is misleading, and, if an allegation regarding the statement is made on information and belief, ... state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Such facts must give rise to a "strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

In *Tellabs v. Makor Issues & Rights*, the Supreme Court defined "strong inference" to mean that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. 308, 324, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). This requires the district court to "consider the complaint in its entirety," in addition to engaging in an allegation-by-

allegation analysis. *Id.* at 323–24, 127 S.Ct. 2499. The court may "only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference. *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991 (9th Cir.2009).

**B. Leave to Amend**

■■ Pursuant to Federal Rule of Civil Procedure 15(a), a court should grant leave to amend a complaint "when justice so requires," because "the purpose of Rule 15 . . . [is] to facilitate *decision on the merits,* rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (emphasis in original). The Court may deny leave to amend, however, for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (2003) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

**III. DISCUSSION**

Defendants bring this Motion to Dismiss on two grounds: (1) that the claims in the FAC are subject to a binding arbitration agreement, and must be dismissed because this Court lacks jurisdiction to hear said claims, and (2) failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

For the reasons outlined below, the Court DENIES without prejudice the Motion to Dismiss the FAC on the grounds that the claims are subject to an arbitration agreement, because the validity of the arbitration clause cannot be determined without an evidentiary hearing as required by the Federal Arbitration Act, 9 U.S.C. § 4. Defendants may file a motion to compel arbitration in order to determine the validity of the arbitration clause. The Court further GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

**A. Motion to Dismiss Due to the Arbitration Clause in the July 22 Agreement**

Defendants ask the Court to dismiss the FAC because Plaintiff's claims are subject to an arbitration clause. (Mot. to Dismiss, ECF 34 at 5–8) Defendants allege that the arbitration clause governs any of Plaintiff's allegations concerning "disputes [that] relate to any purported obligation concerning the EB–5 process," but not Plaintiff's claims regarding "his investment." (Mot. at 7) Defendants, however, make no attempt to disaggregate which claims fall within each of these two baskets, instead arguing that *all* claims should be dismissed because Plaintiff has failed to identify exactly which of his claims arise out of the July 22 Agreement and which of his claims arise from his investments. (Mot. at 5:22–23) Defendants state that they could not bring a motion to compel arbitration under the FAA because Plaintiff chose to intertwine all of his claims arising out of the July 22 Agreement with his other claims. Defendants do not explain why it would be Plaintiff's obligation to separate his claims.

Plaintiff argues in his opposition papers and alleges in his FAC that the Court should find the arbitration agreement invalid because Plaintiff's consent to submit claims to arbitration was procured by fraud and misrepresentation. (*See, e.g.,* ECF 29 at 40–41) Plaintiff alleges that the contract was written in English and he only reads and speaks Farsi. He further alleges that Defendant Khazen undertook to translate the July 22 Agreement imme-

diately prior to Plaintiff signing the Agreement but during the five-minute summary of the terms of the Agreement, Defendant Khazen omitted any reference to the arbitration clause and denied him the opportunity to review the contract. (FAC ¶¶ 33, 222–225)

Based on these arguments, it is incumbent upon this court to determine whether the matter can be resolved by a motion to dismiss. Enforceability of the arbitration clause and determination of the scope of that clause is governed by the terms of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14. Under the FAA arbitration agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A party seeking to invoke an arbitration agreement, pursuant to the FAA, must "petition any United States district court which, save for such agreement, would have jurisdiction [to hear the matter], for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Once a party does so, the district court engages in an inquiry *only* to determine whether the arbitration agreement is valid, and whether the agreement encompasses the claims at issue. *See, e.g., Mitsubishi Motors Co. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 627–28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.") The FAA provides for a summary proceeding, including trial by jury, to resolve factual disputes. 9 U.S.C. § 4.

Here, although Defendants urge this court to decide the issue of enforceability of the arbitration clause through this motion to dismiss, they have not cited any authority for bypassing an evidentiary hearing to resolve disputed issues of fact regarding the validity of the arbitration clause.

Defendants cite *Thinket Info. Resources v. Sun Microsystems* 368 F.3d 1053, 1060 (9th Cir.2004) for the proposition that claims subject to arbitration can be appropriately dismissed pursuant to a Rule 12(b)(6) motion to dismiss, in lieu of a motion to compel arbitration under the FAA. Although generally, that proposition is true, none of the cases cited by Defendants establish that the court may resolve a factual dispute regarding the validity of an arbitration clause absent an evidentiary hearing as provided for in the FAA.

The Court therefore DENIES Defendants' Motion to Dismiss due to the existence of an arbitration agreement. Defendant must comply with the FAA's procedure for petitioning the court for such relief. *See* 9 U.S.C. § 4. Defendants may, if they so choose, bring a motion to compel arbitration, which delineates which claims they believe are subject to arbitration and which claims fall outside the scope of the arbitration agreement.

### B. Motion to Dismiss Pursuant to Rule 12(b)(6)

The Court now considers, in turn, Defendants' Motion to Dismiss each cause of action pursuant to Rule 12(b)(6).

### 1. Claims Voluntarily Dismissed by Plaintiff Through the Motion for Leave to Amend (2nd, 4th, 9th, 10th, and 11th Causes of Action)

Plaintiff has agreed, pursuant to the Motion for Leave to Amend, to withdraw the following claims: "violation of section 17(a) of the Securities Act" (second cause of action); "violation of the broker-dealer

registration provisions" (fourth cause of action); "violation of section 15(a) of the Exchange Act" (also the fourth cause of action); "civil conspiracy" (ninth and tenth causes of action); and "aiding and abetting" (eleventh cause of action). The Motion for Leave to Amend is discussed, and granted, in Part III.C, *infra*.

For purposes of ruling on the operative complaint, the FAC, the Court hereby DISMISSES the above five claims pursuant to the decision of Plaintiff voluntarily to withdraw the claims from the litigation. The second, fourth, ninth, tenth, and eleventh causes of action are therefore DISMISSED.

### 2. Other Claims in the FAC

Plaintiff includes seventeen (17) other causes of action in his FAC. The Court addresses the Rule 12(b)(6) motion against each in turn. For purposes of clarity, claims will be grouped according to their legal and factual similarity rather than by their initial numbering in the Complaint.

### i. Claims for Violations of Federal and State Securities Laws (1st, 3rd, 5th, 6th, and 7th Causes of Action)

Plaintiff brings five claims for violations of federal and state securities laws. These are: "Unregistered Sale of Securities Under Securities Act §§ 5(a), 5(c)" (first cause of action); "Fraud in Connection with Sale of Securities Under Securities Act § 10b–5" (third cause of action); "Unregistered Investment Advisor Under Advisers Act § 203(a)" (fifth cause of action); "Violations of California Securities Law § 25401" (sixth cause of action); and "Offer/Sale of Unregistered Securities Under California Corporations Code § 25110" (seventh cause of action). For the following reasons, the Court GRANTS Defendants' Motion to Dismiss these five claims, but gives Plaintiff leave to amend in order to cure the deficiencies outlined by the Court.

### a. Violations of State and Federal Registration Requirements (1st and 7th Causes of Action)

Plaintiff brings two claims for violations of securities registration requirements: his first cause of action, for violations of the federal registration requirements pursuant to §§ 5(a) and 5(c) of the Securities Act, and his seventh cause of action, for violations of California's laws regulating the sale of unregistered securities under Corporations Code § 25110. For the reasons below, the Court DISMISSES both claims, with leave to amend.

### i. Violations of §§ 5(a) and 5(c) of the Securities Act (1st Cause of Action)

Section 5(a) of the Securities Act makes it a violation of federal law to "make use of any means or instruments of transportation or communication in interstate commerce or the mails to sell [an unregistered] security," or "to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a). Section 5(c), similarly, "prohibits *unregistered offers* to sell and buy unregistered securities." *SEC v. M & A West, Inc.,* 538 F.3d 1043, 1050 (9th Cir.2008) (citing 15 U.S.C. § 77e(c)) (emphasis in original).

 To plead a violation of these statutes, a party must allege (1) the offer or sale of securities, (2) in interstate commerce, (3) without prior registration with the SEC. *See, e.g., SEC v. Loomis,* 969 F.Supp.2d 1226 (E.D.Cal.2013). However, a security does not fall within the protections of Sections 5(a) and 5(c) if it is subject to one of several exemptions to the registration requirement, codified under Regulation D, 17 C.F.R. § 230.506, and in section 4(2) of the Securities Act. *See, e.g.,*

*Apollo Capital Fund LLC v. Roth Capital Partners, LLC,* 158 Cal.App.4th 226, 250–51, 70 Cal.Rptr.3d 199 (2007).

Plaintiff claims that Defendants have violated Sections 5(a) and 5(c) because they have used the "instrumentalities of transportation or communication ... to offer to sell or to sell securities," (ECF 29 ¶ 71), and that "[n]o registration statement had been filed with the Securities and Exchange Commission." (*Id.* ¶72)

Defendants move to dismiss, arguing that the securities up for sale were exempt under Rule 506 of Regulation D and Section 4(2) of the Securities Act.

Rule 506 is a "safe harbor" provision, which permits a private company to sell securities without having to register with the SEC or file reports with the SEC, provided certain conditions are met. The company cannot "use general solicitation or advertising to market the securities." Further, the company can sell securities to an unlimited number of sophisticated "accredited investors," as defined under Rule 501 of Regulation D, but only a maximum of thirty-five "unaccredited investors." Finally, the company cannot violate antifraud provisions of the federal securities laws in the information it provides to investors. If these conditions are met, the security in question is considered a "covered security" for purposes of the exemption, and registration is not required. Section 4(2) exempts "transactions by an issuer not involving any public offering," but does not apply when "a particular class of persons affected need the protection of the [Securities] Act." *SEC v. Platforms Wireless Int'l Corp.,* 617 F.3d 1072, 1090 (9th Cir. 2010) ("*A limited distribution to highly sophisticated investors,* rather than a general distribution to the public, is not a public offering within the meaning of the section of the Securities Act ...."); *see also* 15 U.S.C. § 77d(2) (emphasis added).

The Court agrees with Defendants that Plaintiff has not pleaded a violation of either Section 5(a) or 5(c). Here, Plaintiff has not alleged facts demonstrating that Defendants were required to register the securities in question. Plaintiff has not alleged facts showing that the securities themselves were made generally available, via solicitation or advertising. Instead, Plaintiff has claimed that Defendants used the Internet to market USIIC's business in helping foreign investors secure EB–5 Visas. (*See, e.g.,* ECF 29 ¶ 24) Plaintiff has not alleged that the security he purchased was made generally available to any other purchaser, nor that it was made available via general solicitation or advertisement. Simply alleging that the business itself advertised its services to the general public is not enough to trigger liability for Defendants under the language of Regulation D.

In order to state this claim, Plaintiff must allege facts to show that Defendants utilized a general solicitation *in order to market the securities themselves.* Moreover, Plaintiff has only alleged that the securities were offered to him individually, and not any other investor, which would show Defendants' compliance with the limitations on the number of investors to which it could offer securities under Regulation D. Finally, Plaintiff has not specifically alleged facts showing that Defendants have violated antifraud provisions of the securities laws in the information provided to Plaintiff.

The Court thereby GRANTS Defendants' Motion to Dismiss with regard to Plaintiff's first cause of action for violations of Sections 5(a) and 5(c) of the Securities Act. The court gives Plaintiff leave to amend to allege that the securities in question are subject to the registration

provisions of the Act, consistent with the deficiencies outlined above.

### ii. Violations of California Securities Law Under Corporations Code § 25110 (7th Cause of Action)

Plaintiff's seventh cause of action alleges a violation of Section 25110 of the California Corporations Code, regarding the offer and sale of unqualified securities. Section 25110 "makes it illegal to sell an unqualified security unless the security itself" is exempt from state registration and qualification requirements. *People v. Simon*, 9 Cal.4th 493, 499, 37 Cal.Rptr.2d 278, 886 P.2d 1271 (1995). Plaintiff argues that "[a]t the time the Defendants sold these securities [to Plaintiff], the securities were subject to qualification and were not exempt from qualification," (ECF 29 ¶ 97)

Defendants move to dismiss because the claims under the California Corporations Code are preempted by the National Securities Markets Improvement Act ("NSMIA"), which prohibits states from requiring registration of a "covered security" including securities exempt from registration pursuant to SEC rules or regulations. 15 U.S.C. § 77r; *see Apollo Capital Fund LLC v. Roth Capital Partners, LLC*, 158 Cal.App.4th 226, 249–50, 70 Cal. Rptr.3d 199 (2007). Defendants argue that since the securities in question were exempt under Regulation D, Plaintiff's state law registration claims are preempted. *Cf. Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 910–12 (6th Cir.2007) ("[Offerings that] actually qualify for a federal securities registration exemption ... enjoy NSMIA preemption.").

■ Plaintiff, although acknowledging federal preemption of a claim for violation of Corporations Code § 25110 for covered securities under federal law, argues that the securities in question are not "covered securities." (Pl. Opp. at 18) However, Plaintiff has not pled sufficient facts to support his conclusion that the securities are not "covered securities" that were subject to registration requirements or exemptions under the Securities Act. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" (citations omitted)) Thus, as pleaded, the seventh cause of action is preempted by federal law.

The Court therefore GRANTS Defendants' Motion to Dismiss with regard to Plaintiff's seventh cause of action for claims under Section 25110 of the California Corporations Code. The Court grants Plaintiff leave to amend in order to plead *facts* sufficient to show that the offered securities were not covered securities and thus subject to the requirements of state registration requirements as provided in Corporations Code § 25110.

### b. State and Federal Securities Fraud Claims (3rd and 6th Causes of Action)

Plaintiff brings two claims for securities fraud: his third cause of action, for violations of Section 10b–5 of the Securities Act, and his sixth cause of action, for violations of California Corporations Code § 25401. For the reasons outlined below, the Court DISMISSES both causes of action, with leave to amend.

### 1. Section 10b–5 Claims (3rd Cause of Action)

■ Section 10b–5 bars any person from "us[ing] or employ[ing], in connection with the purchase or sale of any security, ... any manipulative or deceptive device or contrivance." 15 U.S.C. § 78j(b). To state a claim under Section 10b–5, a Plaintiff must plead six elements: "(1) material misrepresentation or omission by the defendant; (2) scienter; (3) a connection be-

tween the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Janus Capital Group, Inc. v. First Derivative Traders,* — U.S. —, 131 S.Ct. 2296, 2301, 180 L.Ed.2d 166 (2011). A Plaintiff stating a claim under Section 10b must "plead with particularity both falsity and scienter." *Ronconi v. Larkin,* 253 F.3d 423, 429 (9th Cir.2001). Plaintiff must "specify each statement alleged to have been misleading, the reasons why the statement is misleading, and, if an allegation regarding the statement is made on information and belief, ... *state with particularity all facts* on which that belief is formed." 15 U.S.C. § 78u–4(b)(1) (emphasis added).

Plaintiff's fraud allegations are laid out most explicitly in paragraphs 54 through 56 of the FAC. Plaintiff alleges eight specific "oral and written misrepresentations [made] with the intent to defraud plaintiff." (ECF 29 ¶ 54) These allegations are: (a) that USIIC was an EB–5 Regional Center, approved by the USCIS; (b) that USIIC claimed it made low-risk investments in community banks, whereby Plaintiff could not lose the principal he invested; (c) that USIIC had a "skilled team of business finance and legal professionals"; (d) that USIIC had a strong management team with "years of high-level managerial experience ... focusing on banking, management and finance;" (e) that Defendant Conti had sixteen years of experience on Wall Street; (f) that Defendant Shadman had managed a successful real estate company; (g) that Plaintiff, through USIIC, could acquire other investment opportunities; and (h) that Plaintiff's investments "would obtain[ ] a high rate of capital growth." (ECF 29 ¶ 54) Plaintiff contends that each of these statements was false. (*Id.* ¶55) Finally, Plaintiff alleges three material omissions: (a)

that the investments offered to Plaintiff were not properly registered, in violation of state and federal law;. (b) that the shares in USIIC issued to Plaintiff were unregistered and were not freely tradable common shares; and (c) that USIIC were "participants in money laundering, OFAC regulations evasion, forging government documents and numerous other illegal activities." (*Id.* ¶56)

Defendants argue that this claim should be dismissed for failure to adequately plead five elements of a 10–b claim—material misrepresentations, scienter, economic loss, and loss causation. The Court agrees with Defendant that Plaintiff has failed to plead adequate facts to allege material misrepresentations (b) through (h), a causal relationship between material misrepresentation (a) and the purchase or sale of a security, and scienter.

 The Court finds, with regard to Plaintiff's alleged misrepresentations (b) through (h), that Plaintiff has failed to meet its Rule 9(b) burden of pleading the "who, what, when, where, and how" of each allegedly false statement. *See, e.g., In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534 (3d Cir.1999) (stating that the pleading language of "with particularity" in the PLSRA "echoes precisely" Rule 9(b)'s fraud pleading language). The Court is unsure who said each of these statements, what the content of these statements were, when and where they were made, and even how they were delivered to the Plaintiff—whether orally or in written form, and whether in English or in Farsi. Plaintiff includes quoted statements in several of his allegations, but does not identify the source of these quotations. (*See, e.g.,* ECF 29 ¶ 54(e) ("That Stacey Conti had sixteen years of 'successful Wall Street experience.'"))

Even were the Court able to parse the exact context in which each of these statements was made, Plaintiff has not sufficiently pled facts to demonstrate that they were false: for example, Plaintiff has not pled facts establishing *why* USIIC's employees were not skilled professionals, or skilled in the financial or banking industry. Plaintiff has not alleged any facts as to why Stacey Conti lacked Wall Street experience, nor a basis on which this allegation could be made upon information or belief. Plaintiff alleges that Michael Shadman has filed for bankruptcy, but does not allege why this is material to his alleged experience as owner of a successful real estate company. Plaintiff fails to allege why he could not acquire loans or mortgages through USIIC. Finally, Plaintiff fails to allege what the capital growth of USIIC's investment was, such that he could allege that it was "very low." (ECF 29 ¶ 54(h))

Plaintiff's allegation regarding misrepresentation (a), that the USIIC was a US-CIS–approved EB-5 Regional Center, is a different matter. Plaintiff alleges in the FAC that he was told by Defendant Khazen in April 2012 that USIIC was an EB-5 Regional Center. (ECF 29 ¶ 29) He further alleges that Khazen and Shadman provided Plaintiff with documents during a July 22, 2012 meeting, which stated that USIIC "was running an EB-5 green card program." (*Id.* ¶32)

Defendants further argue that Plaintiff has not met his pleadings burden because he has not "establish[ed] a connection between this alleged misrepresentation and the actual purchase of a security," (ECF 34 at 10). Defendants point out that Plaintiff signed an Engagement Agreement which clearly stated that USIIC's Regional Center status was pending, which would abrogate any reliance on the alleged prior statements. (*Id.*)

The Court agrees with Defendants that Plaintiff has not pled how the material misrepresentation of USIIC's Regional Center status *caused him* to purchase the security. He alleges that he initially became involved with USIIC and its leadership team due to their insistence that USIIC was a qualified EB-5 Regional Center. (ECF 29 ¶¶ 27–30) Further, Plaintiff states that, when the document was translated for him by Khazen, he was not informed that the regional status application was pending. (*Id.* ¶33) This, however, is not sufficient to plead that the material misrepresentation caused him to purchase the securities, when the text of the contract itself states specifically that USIIC's Regional Center status was pending. (ECF 29–3 at 1)

■ Additionally, the Court finds that Plaintiff has not adequately pled scienter. To determine scienter, the Court must "conduct a dual inquiry: first, ... determine whether any of the plaintiff's allegations, standing alone ... create a strong inference of scienter; second, if no individual allegations are sufficient, we will conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference" of scienter. *Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 991–92 (9th Cir.2009).

■ The Court finds that none of the allegations standing alone creates a strong inference of scienter. First, the FAC lacks sufficient factual allegations to support Plaintiff's conclusion that he statements were false. Second, there is a paucity of factual allegations to support scienter. Plaintiff provides little more than a series of cursorily pleaded statements, none of which show that any of the Defendants made any statements with the intent to defraud Plaintiff—though Plaintiff repeatedly uses the words "fraud" and

"defrauded" to described the conduct allegedly engaged in by Defendants, the only facts he has pleaded with specificity that could raise a possible inference of intent to defraud is Defendants' alleged mistranslation of the Engagement Agreement, which included statements that USIIC did not yet have official status as an EB–5 Regional Center but which Plaintiff alleges were not included in the "five minute" translation of the document from English to Farsi. (ECF 29 ¶ 33) However, Plaintiff does not claim that this fact was left out of the translation intentionally and for the purpose of misleading Plaintiff. (*Id.*) Conclusory statements about Defendants' scienter, without corroborating factual allegations, "are usually insufficient, standing alone, to adequately allege scienter." *Zucco Partners,* 552 F.3d 981, 998.

The court has also reviewed all of the factual allegations supporting scienter as a whole to determine whether the insufficient individual allegations in combination create a strong inference of scienter. Unfortunately, Plaintiff's pleading fares no better under a holistic review. The allegations are simply too general, unsupported by factual statements and simply not plausible to support the necessary inference.

Finding that Plaintiff has inadequately met the heightened pleading burdens under Rule 9(b) and the PLSRA to plead falsity and scienter with particularity, *see Ronconi,* 253 F.3d 423, 429, the Court DISMISSES Plaintiff's third cause of action for violations of Section 10b–5 of the Securities Act, but grants leave to amend in order to cure the deficiencies outlined above.

### 2. Cal. Corp.Code § 25401 Claims (6th Cause of Action)

Plaintiff's sixth cause of action is for violations of California Corporations Code section 25401, which makes it illegal to "offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made . . . not misleading."

Defendants move to dismiss on the same basis as Plaintiff's claims under Section 10b–5 of the Securities Act. (*See* Reply, ECF 39 at 8 ("The sixth cause of action . . . fails for the same reasons that Plaintiff's anti-fraud claims under the federal securities laws fail."))

The Court agrees with Defendants that Plaintiff's inability to state a claim for fraud under Section 10b–5 is also fatal to his § 25401 claims. *See Jackson v. Fischer,* 931 F.Supp.2d 1049, 1063 (N.D.Cal. 2013) (finding that a Plaintiff unable to state a claim under 10b–5 was also unable to state a claim under § 25401, because both statutes required the Court to engage in the same factual inquiry). Plaintiff has not pleaded sufficient facts to show any material misrepresentation, as discussed in greater detail above. Having failed to do so, he cannot state a claim for a violation of section 25401.

The Court DISMISSES Plaintiff's sixth cause of action for violations of California Corporations Code § 25401, but grants leave to amend for Plaintiff to cure the deficiencies outlined by the Court.

### c. Investment Advisor Act Claims (5th Cause of Action)

Plaintiff's fifth cause of action is for violations of Section 203(a) of the Investment Advisers Act, 15 U.S.C. § 80b–2(a)(11). Plaintiff alleges that Defendants acted as "investment advisers" as defined by the Act, but had not registered as investment advisers with the Securities and Exchange Commission. (ECF 29 ¶¶ 87–88)

The Investment Advisers Act defines "investment adviser" as "any person who, for compensation, engages in the business of advising others ... as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b–2(a)(11). Any person meeting this definition, and who has not registered with the SEC as an investment adviser, runs afoul of the act. The remedy for violations of the Advisers Act is rescission of the underlying advising agreement. *See, e.g., Transamerica Mortg. Advisors (TAMA) v. Lewis*, 444 U.S. 11, 24, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979).

Defendants argue that this claim fails because Plaintiff has not identified an investment advisor agreement, (Mot. to Dismiss, ECF 34 at 13), and that Plaintiff has not requested rescission as his remedy. (Reply, ECF 39 at 8)

Although asserting the opposite, Plaintiff apparently concedes that this claim is not adequately pled. (Pl. Opp. at 18) He acknowledges that his remedy would be limited to rescission of the Engagement Agreement and he requests leave to amend to correct this error.

The Court agrees with Defendants. Plaintiff claims only that the Defendants "engaged in the business of advising clients, for compensation, as to the value of securities and as to the advisability of investing in, purchasing, or selling securities," thereby alleging that Defendants are investment advisers under the terms of the Advisers Act. ( ECF 29 ¶ 87) No facts have been alleged to support this conclusory allegation, thus as pled, it is not plausible under *Iqbal* and *Twombly*. Moreover, Plaintiff fails to identify which contract identified in the FAC would be subject to this claim or to seek rescission of the allegedly offending investor advisor con-

tract, which would be his sole remedy under the law.

In order successfully to plead this claim, Plaintiff must allege facts that demonstrate that Defendants acted as investment advisors, as defined by § 203(a) but had not registered with the SEC. Plaintiff must also identify the allegedly unlawful contract and request rescission as the sole remedy for the alleged violation. The Court thus GRANTS Defendants' Motion to Dismiss Plaintiff's fifth cause of action for violations of the Investment Advisers Act, but grant leave to amend for Plaintiff to allege facts to show Defendants were engaging in investment advising as defined by the Act.

### ii. Claim for Civil RICO (Eighth Cause of Action)

Plaintiff's eighth cause of action is for violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), under 18 U.S.C. §§ 1961–1968.

 ▪ To state a claim for a civil violation of the RICO Act, Plaintiff must plead five elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity that [ (5) causes] injury to the plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l LP*, 300 F.3d 1083, 1086 (citing 18 U.S.C. §§ 1962(c), 1964(c)). In this Circuit, a plaintiff seeking to plead a RICO claim based on a predicate act of fraud must comply with the pleading requirements for fraud under Rule 9(b), which demands plaintiff pleads "with particularity the time, place, and manner of each act of fraud, *plus the role of each defendant in each scheme*." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (1991) (emphasis added) (finding that the fraud pleading requirement applies when the predicate act is mail fraud); *see also id.* ("The Ninth Circuit has repeatedly insist-

ed that this [pleading] rule be followed in RICO actions. . . .").

■ Plaintiff alleges that "Defendants and their numerous related corporations are corporations which alone and together constitute one or more ascertainable structures separate and apart from the herein-alleged pattern of racketeering activity so as to constitute an enterprise," (FAC, ECF 29 ¶ 101), which engaged in "illegal money laundering, OFAC regulations evasion, forging government documents, and numerous other illegal activities." (*Id. see also* ¶ 108 ("defendants [engaged in] mail fraud, wire fraud, fraud in the offering and sales of securities, money laundering, [and] OFAC fraud")) Plaintiff alleges that "all defendants conducted and participated directly and indirectly in the conduct of such enterprise's affairs," (*id.* ¶102, *see also* ¶ 104 ("each defendant illegally operated and conducted an integral part of the enterprise")), that "all defendants benefitted from the operation of the enterprise," (*id.* ¶103), and that Defendants "engaged in a continuing pattern of racketeering activity." (*Id.* ¶107)

Defendants move to dismiss because "none of the [necessary RICO] elements have been alleged except in conclusory terms." (Mot. to Dismiss, ECF 34 at 14) The Court agrees.

■ First, Plaintiff has not pled any facts that would allow the Court to ascertain the "enterprise" for purposes of the RICO violation. An enterprise must have an organizational, decision-making structure; however, that structure need not exist "beyond that necessary to carry out its racketeering activities." *Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (2007) (en banc). A Plaintiff must plead only that there exists an "ongoing organization, [either] formal or informal," which acts through the "coordinated nature of defendants' activity," and functions as a "con-

tinuing unit," meaning that the association is ongoing, rather than engaged in isolated activity. *Odom*, 486 F.3d 541, 551–53 (citing *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)).

Here, Plaintiff alleges no such structure. Plaintiff merely alleges that the Defendants and their corporations form an enterprise. Such a cursory allegation gives the Court no information as to the form or structure of that enterprise, the ways in which decisions are made in the enterprise, or even the hierarchy of the alleged actors in the enterprise. Plaintiff does not cite *any* facts about the alleged enterprise whatsoever—only that every Defendant sued in this matter is a part of the enterprise. Plaintiff does not allege *how* each individual Defendant is engaged in the enterprise, only making a cursory allegation that all "Individual Defendants and their numerous related corporations" constitute the structure of the enterprise. (FAC, ECF 29 ¶ 101) Such allegations are made without any supporting factual information.

Further, Plaintiff fails to sufficiently plead which activities in the FAC are "racketeering activities" as defined in the RICO Act. To plead racketeering activity, the Plaintiff must identify the "predicate acts" it is alleging form the basis for the racketeering claim. Such acts are defined in 18 U.S.C. § 1961. Plaintiff does include a list of such activities in paragraphs 101 and 108 of the FAC, including mail fraud, wire fraud, fraud in the offering and sale of securities, OFAC fraud, and "other illegal acts." (FAC, ECF 29, ¶¶ 101, 108)

There are two problems with Plaintiff's pleadings. First, the PSLRA eliminated securities fraud as a predicate act for purposes of a RICO claim. *See, e.g., Powers v. Wells Fargo Bank, N.A.*, 439 F.3d 1043, 1055 (9th Cir.2006) ("Basing our decision

on the unambiguous text of the statute, we hold that § 1964(c) bars RICO actions alleging securities fraud."). Second, Plaintiff has not pled *with particularity* the acts constituting wire fraud, mail fraud, or OFAC fraud as predicate acts. Plaintiff's mere listing of such alleged crimes, without supporting, particularized factual pleadings as required under Rule 9(b), is not enough to survive a motion to dismiss. *Cf. Andrews Farms v. Calcot, Ltd.*, 527 F.Supp.2d 1239, 1255 (E.D.Cal.2007) (citing *Odom*, 486 F.3d 541, 554) (finding that a plaintiff may plead *generally* the defendants' state of mind or intent to deceive or defraud, but must make "particularized allegations [regarding] the factual circumstances of the fraud itself" when pleading mail or wire fraud as a predicate act).

Plaintiff has not met his burden to *either* plead the existence of a racketeering enterprise or plead with particularity the factual circumstances of the predicate acts giving rise to his claimed RICO violation. As such, the Court DISMISSES Plaintiff's eighth cause of action, but grants Plaintiff leave to amend to cure these pleading deficiencies.

### iii. Claims for Common Law Fraud (12th, 13th, 14th, and 15th Causes of Action)

Plaintiff alleges four common law fraud causes of action: his twelfth cause of action for fraudulent misrepresentation, his thirteenth cause of action for fraud in the inducement, his fourteenth cause of action for fraud in the execution or inception of the contract, and his fifteenth cause of action for fraudulent concealment.

All fraud actions must be pled with particularity pursuant to the requirements of Rule 9. *See, e.g., Cmte. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal.3d 197, 216, 197 Cal.Rptr. 783, 673 P.2d 660 (1983). Under California law, this requires that *each* false or fraudulent statement alleged in the pleadings include the "how, when, where, to whom, and by what means the representations" were made. *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 993, 22 Cal. Rptr.3d 352, 102 P.3d 268 (2004).

Plaintiff's twelfth cause of action alleges that the five Individual Defendants "delivered the Defendants' Inducement Misrepresentations to Plaintiff." (FAC, ECF 29 ¶ 144) These misrepresentations, Plaintiff alleges, were designed to "induce Plaintiff to enter into an agreement with [USIIC]" to purchase securities, (*id.* ¶145), and that Plaintiff justifiably relied on these misrepresentations "because of all the advertising materials, promotional materials, statements on the website, statements and pitches which touted USIIC as an EB–5 Regional Center." (*Id.* ¶148)

Plaintiff's thirteenth cause of action alleges that Defendants Shadman and Khazen made fraudulent "inducement representations to Plaintiff in Los Angeles and Dubai to induce plaintiff to enter into the Engagement Agreement dated July 22, 2012." (*Id.* ¶155) Further, he alleges that Shadman and Khazen, along with Pirooz and Violet Parvarandeh, "[o]n the fraud and inducement dates, ... made the inducement representations to Plaintiff in San Jose to induce Plaintiff to enter into the [October 3 Investment Agreement]." (*Id.* ¶156)

Plaintiff's fourteenth cause of action alleges that Khazen "told Plaintiff that the documents Plaintiff was signing consisted of standard language expressing or embodying the inducement representations," (*id.* ¶166), which Defendants "intended for Plaintiff to rely on ... instead of the onerous, contradictory, misleading, and fraudulent provisions of the individual Agreements." (*Id.* ¶166) Plaintiff claims that he did not know the documents "contained

onerous and fraudulent terms" and "did not know that the documents did not include, and were consistent with, the inducement misrepresentations." (*Id.* ¶169) Finally, he alleges that Defendants "did not deliver the contracts until well after Plaintiff had relied on the inducement representations." (*Id.* ¶170)

Plaintiff's fifteenth cause of action alleges that Defendants "concealed or suppressed from Plaintiff material facts associated with the Collective Misrepresentations," (*id.* ¶177), which Defendants "were under a duty to disclose." (*Id.* ¶178) He alleges that he "would not have invested in any of the USIIC corporations if Plaintiff had been apprised of the Concealed Facts." (*Id.* ¶180)

Defendants move to dismiss these four causes of action because Plaintiff has not met its burden to plead each false or fraudulent statement with specificity, pursuant to Rule 9(b), and because Plaintiff has not adequately pled his own justifiable reliance on any alleged fraudulent or intentional misrepresentation. (Mot. to Dismiss, ECF 34 at 18–19)

 The Court agrees with Defendants with regard to all four common law fraud causes of action. First, Plaintiff does not attempt to disaggregate which statements made in his lengthy section of general allegations is being referred to when he cites to the "inducement misrepresentations" or "Collective Misrepresentations" that underlie each of the four causes of action. *Cf. In re Hunnicutt* 466 B.R. 797 (Bankr.D.S.C.2011) ("The particular facts which support each element of each cause of action should be set forth, and their relevance and applicability to the particular legal claim the plaintiff is attempting to plead should be *expressly stated.*") (emphasis added). Plaintiff does not define either of these terms in relation to the list of purported misrepresentations he includes earlier in the FAC. (*See* FAC, ECF 29 ¶¶ 54–56) Instead, he asks the Court piece together which misrepresentations he alleges pertain to each of his fraud causes of action. This is the job of the pleadings, however, and the Plaintiff fails to meet his burden to allege with particularity, and thus to put on notice each defendant charged with fraud of the alleged unlawful conduct. *Cf. Iqbal,* 556 U.S. 662, 687, 129 S.Ct. 1937, 173 L.Ed.2d 868 ("Rule 8 does not empower respondent to plead the bare elements of his cause of. action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss."). In his Opposition to the Motion to Dismiss, Plaintiff states that "paragraphs 12, 17, 18, 23, and 24 of the 'FAC' set forth the time, place, and nature of defendants' misrepresentations," (Opp. to Mot. to Dismiss, ECF 37 at 20), but these paragraphs do not in fact include any such information.

If Plaintiff chooses to amend, and outline which alleged misrepresentations align with which causes of action, he still must comply with Rule 9(b)'s heightened pleading requirements to give notice to Defendants of the context of each alleged misrepresentation. This is the "who, when, what, where, and by what means" requirement outlined in *Robinson* above. Each cause of action must isolate each alleged false or fraudulent statement on which it relies, and each statement must include the factual details required under *Robinson.* Further, Plaintiff must include only those Defendants for whom he can plead sufficient facts to allege liability under each cause of action; simply including "all Defendants" in each cause of action, while not alleging which Defendants are engaged in which behaviors giving rise to such causes of action, is not sufficient to create liability for all Defendants. *See Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167

L.Ed.2d 929 (Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face").

The Court thus DISMISSES Plaintiff's twelfth, thirteenth, fourteenth, and fifteenth causes of action, and grants Plaintiff leave to amend in order to cure the deficiencies outlined by the Court.

#### iv. Embezzlement and Conversion (16th and 17th Causes of Action)

Plaintiff's sixteenth cause of action is for civil embezzlement and diversion of funds, while Plaintiff's seventeenth cause of action is for conversion.

##### 1. Embezzlement (16th Cause of Action)

Under California law, embezzlement is a criminal act. Cal. Pen.Code § 503 ("Embezzlement is the fraudulent appropriate of property by a person to whom it has been entrusted."); *see also* Cal. Pen.Code § 484c ("A person who submits a false voucher to obtain construction loan funds and does not use the funds for the purpose for which the claim was submitted is guilty of embezzlement.") However, there is no civil claim for embezzlement under California law; Plaintiff cites to no statute or case law in his Opposition to the Motion to Dismiss which suggests any civil cause of action for embezzlement or diversion of funds.

The Court construes Plaintiff's sixteenth cause of action is simply an alternative attempt to plead fraud and/or conversion, and as such the Court DISMISSES Plaintiff's sixteenth cause of action WITH PREJUDICE.

##### 2. Conversion (17th Cause of Action)

To state a claim for conversion under California law, a party must allege three elements: (1) his ownership, or right to possession, of property at the time of the conversion, (2) the defendant's conversion, by wrongful act or disposition of property rights, and (3) damages. *See Mindys Cosmetics, Inc. v. Dakar,* 611 F.3d 590, 601 (9th Cir.2010). A party must also plead that the converter "has assumed control over the property or that the alleged converter has *applied the property to his own use." Oakdale Village Group v. Fong,* 43 Cal.App.4th 539, 543–44, 50 Cal.Rptr.2d 810 (1996) (emphasis added).

Plaintiff claims that he owned $1,000,000 in funds, and that Defendants, upon receipt of these funds, placed Plaintiff's money into an escrow account. (ECF 29–1 ¶ 189) Plaintiff claims that he was informed, throughout Defendants' statements and promotional materials, that these funds would be removed from the escrow account only when the Regional Center, in which he was investing, was "capable of generating the minimum number of jobs to qualify under the EB–5 Program" for a visa. (*Id.*) Plaintiff further alleges that Defendants "had possession and control of Plaintiff's funds and utilized and diverted Plaintiff's funds without Plaintiff's knowledge." (*Id.* ¶186) Plaintiff alleges he has been damaged in an amount of $1,085,000 due to Defendant's diversion of funds prior to the time in which Plaintiff's investment could have qualified him for an EB–5 Visa. (*Id.* ¶¶ 186–188, 189)

Defendants move to dismiss under the theory that Plaintiff's funds ceased to belong to him "once he became a Limited Partner in USIIC I, LP," (Mot. to Dismiss at 13), and that "Plaintiff ha[d] no right to the funds after he invested them." In their Reply, Defendants argue that Plaintiff's escrow argument was not in his FAC, and that he is attempting to "ignore his own pleadings" in arguing that the funds were converted due to their improper removal from escrow. (Reply, ECF 39 at 10–11)

■ The Court disagrees with Defendants that Plaintiff has gone beyond the pleadings: Plaintiff clearly articulates his allegations that he was told his funds would be put into escrow, only to be removed and invested by Defendants at a time in which the investment vehicle, the Regional Center, generated enough jobs to qualify for the EB–5 program. (ECF 29 ¶ 189); *see Virtanen v. O'Connell,* 140 Cal. App.4th 688, 705, 44 Cal.Rptr.3d 702 (2006) (finding sufficient allegations of conversion when property was taken from escrow "when none of the conditions to close [the escrow account] had been met"). The Court believes that Plaintiff has met its burden to state a claim for conversion: Plaintiff alleges that he owned $1,000,000; that he provided that $1,000,000 as an investment, to be placed in escrow, to be removed only if certain conditions were met; that the money was improperly removed before those conditions were met; and that he has suffered damages due to that removal. These facts are sufficient pursuant to the three factor *Mindy's Cosmetics* test. *See* 611 F.3d 590, 601.

The Court hereby DENIES Defendants' Motion to Dismiss with regard to Plaintiff's seventeenth cause of action for conversion.

### vii. Lanham Act Violations for False Advertising (18th Cause of Action)

■ Plaintiff's eighteenth cause of action alleges violations of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), which "forbids the use of false designations of origin and false descriptions or representations in the advertising and sale of goods and services." *Smith v. Montoro,* 648 F.2d 602, 603 (9th Cir.1981). A false advertising claim under section 43(a) requires the Plaintiff plead five elements:

(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement.

*Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir.1997).

Defendants move to dismiss because the Plaintiff has failed to "alleg[e] a false statement about a 'product'," (Mot. to Dismiss, ECF 34 at 22), and that he has not shown that any statement actually did, or had the tendency to, deceive Plaintiff. (*Id.*)

■ The Court agrees with Defendants. Plaintiff does not plead that Defendants made any false statements about the security itself in the commercial advertisements it made over the Internet—rather, he alleges that Defendants made false statements about USIIC's status as an EB–5 Regional Center. (*Cf.* ECF 29 ¶ 54(a)) Plaintiff makes a single cursory allegation that Defendants misled him into believing he could "acquire loans, mortgage[s] and other investment opportunities," but does not plead that such promises were made in Defendants' commercial advertisements. (*Id.* ¶ 54(g))

The Court hereby GRANTS Defendants' Motion to Dismiss with regard to Plaintiff's eighteenth cause of action for claimed violations under the Lanham Act, and grants leave to amend for Plaintiff to sufficiently plead all five elements required for a false advertising claim under section 43(a), as outlined above.

### viii. Unfair Business Practices (19th Cause of Action)

■ Plaintiff's nineteenth cause of action alleges violations of California Business & Professions Code § 17200 *et seq.* and § 17500 *et seq.* (ECF 29 ¶ 203) Section 17200 makes it illegal for any party to engage in "unlawful, unfair or fraudulent business act or practice." *Cf. Progressive West Ins. Co. v. Yolo Cnty. Superior Court,* 135 Cal.App.4th 263, 287, 37 Cal. Rptr.3d 434 (2005) ("An unlawful business practice under section 17200 is 'an act or practice, committed pursuant to business activity, that is at the same time forbidden by law.' "). The statute's purpose is to "protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *McKell v. Washington Mut., Inc.,* 142 Cal. App.4th 1457, 1470, 49 Cal.Rptr.3d 227 (2006). Section 17500, in contrast, prohibits "any advertising which is untrue or misleading, and which is known, or which by exercise of reasonable care should be known, to be untrue or misleading." *People v. Forest E. Olson, Inc.,* 137 Cal.App.3d 137, 139, 186 Cal.Rptr. 804 (1982). While the scope of conduct "covered by the [Unfair Competition Law] is broad, its remedies are limited.... [It] is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1144, 131 Cal. Rptr.2d 29, 63 P.3d 937 (2003) ("Prevailing plaintiffs are generally limited to injunctive relief and restitution.").[3] Injunctive relief is available as remedy when legal remedies, such as damages, are "inadequate." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91.

Plaintiff alleges that Defendants have engaged in "illegal, unfair and fraudulent activities [as] alleged in this complaint," which have harmed "plaintiff and the California public generally." (ECF 29 ¶¶ 203–04) In its Opposition to Defendants' Motion to Dismiss, Plaintiff states that "having alleged facts sufficient to show both a Lanham Act violation and California securities state law, as shown above, Plaintiff also has alleged facts sufficient to support its UCL claim." (Opp. to Mot. to Dismiss, ECF 37 at 22)

Defendants seek to dismiss because Plaintiff "does not even attempt to define what 'unlawful,' 'unfair,' or 'fraudulent' business practices Defendants allegedly committed." (Mot. to Dismiss, ECF 34 at 22). Further, Defendants argue that section 17200 "does not reach unlawful, unfair, or fraudulent business practices occurring in securities transactions." (*Id.* at 23 (citing *Bowen v. Ziasun Technologies, Inc.,* 116 Cal.App.4th 777, 787–88, 11 Cal. Rptr.3d 522 (2004) ("[F]ederal cases ... have held that section 17200 also does not apply to securities transactions.")))

■ The Court agrees with Defendants insofar as Plaintiff seeks to state a claim under section 17200, based on California securities law. Any such claim is DISMISSED WITH PREJUDICE because section 17200 does not permit claims based in securities transactions. *Cf. Bowen,* 116 Cal.App.4th 777, 787, 11 Cal. Rptr.3d 522.

■ However, Plaintiff's second claim, for false advertising under Section 17500, survives the Motion to Dismiss. Plaintiff's claim is not contingent upon its Lanham Act claim, which the Court has dismissed with leave to amend above. Rather, a

---

**3.** Plaintiff seeks damages under its nineteenth cause of action, which are not obtainable under either § 17200 or § 17500. (ECF 29 ¶ 205 ("[P]laintiff seeks actual damages in accordance with proof."))

§ 17500 claim merely requires that Plaintiff plead that Defendants engaged in "false, unfair, misleading, or deceptive advertising" that had the tendency to deceive members of the public. *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 331–32, 74 Cal. Rptr.2d 55 (1998). Here, Plaintiff alleges that Defendants advertised that they were a qualified EB–5 Regional Center. (ECF 29 ¶ 29 ("[I]n the promotional video, *and on its website,* USIIC represented itself as a regional center and never mentioned that its application was pending.") (emphasis added)) Such an allegation, taken as true, sufficiently pleads that Defendants made a false advertisement, which could deceive members of the public. A statement made in both promotional videos and on a webpage is a statement likely to be believed by a member of the public reading it.

Therefore, Defendants' Motion to Dismiss Plaintiff's nineteenth cause of action for Unfair Business Practices under § 17200 is GRANTED with leave to amend relating to unlawful activity under the Lanham Act, unfair and fraudulent activity. Claims under § 17200 arising out of the securities transaction are DISMISSED WITH PREJUDICE. Defendants' Motion to Dismiss Plaintiff's nineteenth cause of action for false advertising under § 17500 is DENIED.

### ix. Unjust Enrichment (20th Cause of Action)

Plaintiff's twentieth cause of action is for unjust enrichment. Defendants seek to dismiss because "[t]here is no cause of action in California for unjust enrichment," and that unjust enrichment is merely "synonymous with the remedy of restitution." (Mot. to Dismiss, ECF 34 at 23) Plaintiff argues that this claim is recognized and that regardless of whether the claim is entitled "unjust enrichment" or "restitu-

tion", Plaintiff has adequately pled this claim. (Pl. Opp. at 23)

 This Court recognizes that there is a division in the law on this question. California courts, however, have frequently construed causes of action labeled "unjust enrichment" as a "quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App.4th 221, 231, 166 Cal.Rptr.3d 864 (2014) (construing an unjust enrichment claim as one for restitution, and finding that the trial court erred in sustaining a demurrer to the unjust enrichment claim). Regardless of label, California courts have found that equitable claims sounding in quasi-contract, such as a claim for unjust enrichment, are recognized under California law. *Cf., e.g., Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1031 (N.D.Cal.2012) (compiling California case law). This Court is persuaded that a claim for unjust enrichment can lie under California law as "the result of a failure to make restitution under circumstances where it is equitable to do so." *Lauriedale Assoc., Ltd. v. Wilson*, 7 Cal.App.4th 1439, 1448, 9 Cal. Rptr.2d 774 (1992).

 Plaintiff must still plead sufficient facts to state a claim for restitution, which can be awarded "in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud of is unenforceable or ineffective for some reason." *McBride v. Boughton*, 123 Cal.App.4th 379, 389, 20 Cal.Rptr.3d 115 (2004). If the parties have a valid and enforceable contract, a Plaintiff is generally not permitted to proceed on a quasi-contractual claim. *See, e.g., Klein v. Chevron*, Inc., 202 Cal.App.4th 1342, 1388, 137 Cal.Rptr.3d 293 (2012). Under California law, a party pleading unjust enrichment must allege "receipt of a benefit and ... unjust retention of the benefit at the expense of another." *Baggett v. Hewlett-*

*Packard Co.,* 582 F.Supp.2d 1261, 1270 (2007). Defendants' Motion to Dismiss does not engage with the elements of an unjust enrichment claim, and instead only asks the Court to dismiss because unjust enrichment is not a cause of action under California law. (ECF 34 at 23; ECF 39 at 12–13)

■ Here, Plaintiff does not claim anywhere in the FAC that the contract is valid. Plaintiff alleges that the Engagement Agreement was procured by a series of fraudulent misrepresentations, (ECF 29 ¶¶ 54–56), though as described above, does not plead with sufficient particularity facts by which his fraud claims survive the pleading requirements of Rule 9(b). Further, Plaintiff alleges that the Defendants have received the benefit of Plaintiff's investment, and that, due to the alleged fraud in procuring Plaintiff's assent to the contract, have retained this investment unjustly and at Plaintiff's expense. (ECF 29 ¶¶ 191–93) However, the substance of Plaintiff's allegations is only that "Defendants misappropriated, commingled, and inappropriately disbursed Plaintiff's $1,085,000 transferred funds." (*Id.* ¶209) However, Plaintiff has not alleged any facts as to how these monies have been misappropriated, with which funds they have been commingled, or how the funds have been inappropriately disbursed. Plaintiff's cursory allegations regarding the retention of Plaintiff's investment simply do not rise to the level necessary to state a claim under *Iqbal,* which requires "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Court finds that Plaintiff has not sufficiently stated a claim for unjust enrichment. The Court GRANTS Defendants' Motion to Dismiss with regard to Plaintiff's twentieth cause of action, and grants Plaintiff leave to amend.

### x. Tort Claims (21st and 22nd Causes of Action)

Plaintiff alleges two claims that arise in tort: his twenty-first cause of action for intentional infliction of emotional distress ("IIED"), and his twenty-second cause of action for negligent infliction of emotional distress ("NIED").

### 1. IIED (21st Cause of Action)

■ To state a claim for IIED, a Plaintiff must sufficiently plead three elements: (1) that Defendants engaged in "extreme or outrageous conduct" with the intent to cause, or the reckless disregard for the possibility of causing, emotional distress; (2) Plaintiff suffers severe or extreme emotional distress, and (3) actual and proximate causation of the emotional distress by Defendants' outrageous conduct. *Christensen v. Superior Court,* 54 Cal.3d 868, 902–03, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991) (citing *Davidson v. City of Westminster,* 32 Cal.3d 197, 209, 185 Cal.Rptr. 252, 649 P.2d 894 (1982)).

Plaintiff claims that Defendants engaged in "outrageous conduct as described more particularly in the allegations above." (ECF 29 ¶ 212) Plaintiff states that this conduct, including "falsely and fraudulently inducing Plaintiff to take the actions hereinbefore described," (*id.* ¶213), was "outrageous, intentional, malicious, and done for the purpose of causing Plaintiff to suffer ... emotional distress." (*Id.* ¶214) Plaintiff alleges that he has suffered emotional distress, which was due to Defendants' conduct, (*id.* ¶¶ 215–16), and is entitled to damages.

Defendants move to dismiss on the grounds that Plaintiff's FAC "cursorily states that Defendants conduct was outrageous," (Mot. to Dismiss, ECF 34 at 20),

and that the claim is "at most a business dispute," (id.), and not appropriately considered beyond the boundaries acceptable in a civilized society. Defendants state that Plaintiff has not adequately described his mental anguish suffered as a result of the alleged emotional distress, and cites to the California Supreme Court's decision in *Hughes v. Pair*, 46 Cal.4th 1035, 95 Cal. Rptr.3d 636, 209 P.3d 963, which says that such emotional distress must be of "such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Hughes*, 46 Cal.4th 1035, 1051, 95 Cal.Rptr.3d 636, 209 P.3d 963. Plaintiff asserts that California courts routinely award emotional distress damages in fraud actions. (Pl. Opp. at 24)

■ The Court agrees with Defendants that Plaintiff has failed to plead *specific* facts alleging intentional infliction of emotional distress. Though Plaintiff does state that he suffers from "mental anguish, anxiety, and humiliation" as a result of Defendants' conduct, (ECF 29 ¶ 216), he does not specify what conduct has caused such distress. Plaintiff merely reincorporates the entirety of his pleadings, asking the Court to view his previous 211 paragraphs of allegations in total and infer that at least some of those allegations rise to the level necessary to show "extreme or outrageous conduct" as necessary to prove the first *Christensen* factor. 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181. Plaintiff makes no attempt to prove the causation between specific facts and the emotional distress from which he alleges to suffer. He states only that he has suffered emotional distress due to the general conduct of Defendants. He has not proven causation between Defendants' specific conduct and his own particular emotional distress.

Plaintiff claims in response that the California Supreme Court has "generally award[ed] emotional distress damages in fraud actions," but cites only to a case that awards garden variety emotional distress damages, not based upon a claim of IIED. The California Supreme Court has set a high bar for finding severe emotional suffering. *See Hughes*, 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963. Plaintiff has failed to allege facts to support his conclusory allegations of severe emotional suffering. *See Bass v. City of Fremont*, Case No. C12–cv–04943 TEH, 2013 WL 891090 at * 7 (N.D.Cal. Mar. 8, 2013) (dismissing IIED claim based on similarly deficient allegations of severe emotional suffering). The Court hereby GRANTS Defendants' Motion to Dismiss with regard to Plaintiff's twenty-first cause of action for IIED. Plaintiff is granted leave to amend in order to plead *specific* facts that show the extreme and outrageous conduct and causation prongs of the *Christensen* test.

### 2. NIED (22nd Cause of Action)

■ Plaintiff's twenty-second cause of action is for negligent infliction of emotional distress. The California Supreme Court has repeatedly held that there exists in California "no such thing as the independent tort of negligent infliction of emotional distress." *Gu v. BMW of N. Am., LLC*, 132 Cal.App.4th 195, 202, 33 Cal.Rptr.3d 617 (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795)). A claim for negligent infliction of emotional distress requires that the party plead facts to state a claim for general negligence: (1) that Defendant owed Plaintiff a duty, (2) which Defendant breached, (3) the breach of which was an actual and proximate cause of (4) Plaintiff's damages. *See, e.g., Burgess v. Superior Court*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992) ("[W]ell-settled prin-

ciples of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case [for negligent infliction of emotional distress.").

██ Plaintiff alleges that Defendants have "engaged in the outrageous conduct as described more particularly [ ] in the allegations above," (ECF 29 ¶ 219) and that they "knew or should have known that their failure to exercise due care in the performance of their promises would cause Plaintiff severe emotional distress." (*Id.* ¶220) Plaintiff alleges that the Defendants' actions have caused him "mental anguish, anxiety, and humiliation, and physical manifestations of such emotional distress, financial loss and debt." (*Id.* ¶221)

Defendants move to dismiss on the grounds that Plaintiff has not pleaded the necessary "traditional elements of duty, breach, causation, and damages." (Mot. to Dismiss, ECF 48 at 21) The Court agrees. First, Plaintiff has not specifically alleged why *each* Defendant owed him a duty. Having failed to do so, Plaintiff is not able to allege that each Defendant has breached this duty, nor that said breaches, if occurring, were the actual and proximate causes of Plaintiff's alleged damages.

The Court GRANTS Defendants' Motion to Dismiss with regard to Plaintiff's claim for negligent infliction of emotional distress. The Court grants Plaintiff leave to amend in order to allege facts to show how *each* Defendant is liable under a theory of negligence.

### C. Motion for Leave to File a Second Amended Complaint

██ Leave to amend should be freely granted "when justice so requires." *Lopez v. Smith,* 203 F.3d 1122, 1127. A court may deny leave to amend, however, when it is sought in bad faith, or for an improper purpose. *See, e.g., Millar v. Bay* *Area Rapid Transit Dist.,* 236 F.Supp.2d 1110 (N.D.Cal.2002). The Court generally considers four factors in deciding whether leave to amend is proper: "bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *Ditto v. McCurdy,* 510 F.3d 1070, 1078–79 (9th Cir. 2007).

Plaintiff seeks leave to amend so as to assert four additional claims: breach of contract, breach of implied covenant of good faith and fair dealing, rescission, and "accounting and constructive trust." (Mot. for Leave to Amend ("Mot. for Leave"), ECF 50 at 5) Plaintiff further seeks to withdraw four claims, which encompass five causes of action: violations of section 17(a) and 15(a) of the Securities Exchange Act of 1934, violations of broker-dealer registration provisions, civil conspiracy, and aiding and abetting. (*Id.*) Defendants oppose this request for two reasons: that the claims are subject to the arbitration agreement discussed above, and that the Motion is brought in bad faith, and as a "publicity effort to harm the defendants, rather than a serious effort to address the defects in the pleading of the FAC." (Opp. to Mot. for Leave, ECF 53 at 6) The Court finds both arguments unpersuasive.

As to Defendants' first argument regarding the effect of the arbitration agreement, the Court will defer determining which claims are governed by that agreement until it determines whether the arbitration clause is valid. As set forth above, Defendants are advised of the requirement under the FAA that they file a petition to compel arbitration.

As to Defendants' second argument that the proposed SAC is brought in bad faith, the Court finds that Plaintiff's proposed Second Amended Complaint seeks to supplement the factual allegations and re-

spond to the claims raised by Defendants in the Motion to Dismiss. Plaintiff's decision to withdraw several claims, for example, evidences an attempt to clarify the causes of action to be decided on the merits.

 Defendants have not adequately alleged any of the four factors that would permit this Court to deny leave to amend. Defendants argue that Plaintiff is attempting to "defame" Defendants, and that this SAC is a mere "publicity effort." (ECF 53 at 6; *see also id.* at 4–6) Defendants cite to several actions taking place outside the courtroom and litigation as evidence of a "campaign to defame the defendants." (*Id.* at 5) However, Defendants provide no rationale as to why granting Plaintiff the opportunity to file an SAC would help such an alleged publicity effort. Since Defendants do not allege that the opportunity to file an SAC would result in undue delay of the litigation, the Court believes it unlikely that granting leave to file an SAC would result in additional publicity for any alleged campaign to defame Defendants. Rather, the Court believes that granting leave to amend would better effectuate the purposes of Rule 15, "facilitat[ing] decision on the merits" of the claims. *Lopez v. Smith,* 203 F.3d 1122, 1127.

The Court hereby GRANTS Plaintiff's Motion for Leave to Amend. Plaintiff is cautioned that any amendment must also address the deficiencies outlined in this Order. Failure at this juncture to correct the pleading may be fatal to Plaintiff's claims. The court does GRANT leave to add the additional claims set forth in the proposed SAC. Plaintiff shall file the SAC within twenty-one (21) days of this Order, no later than July 14, 2014.

## IV. ORDER

The Court hereby orders as follows:

1. Defendants' Motion to Dismiss on the grounds the contract is subject to an arbitration agreement is DENIED.

2. Defendant's Motion to Dismiss Plaintiff's **seventeenth** cause of action, for conversion, and **nineteenth** cause of action for violations of California Business & Professions Code § 17500 are DENIED without leave to amend.

3. Plaintiff's **second, fourth, ninth, tenth,** and **eleventh** causes of action are DISMISSED pursuant to Plaintiff's decision to voluntarily withdraw them from the litigation.

4. Plaintiff's **first** and **seventh** causes of action, for violations of state and federal securities registration requirements, are DISMISSED with leave to amend.

5. Plaintiff's **third** and **sixth** causes of action, for federal and state securities fraud, are DISMISSED with leave to amend.

6. Plaintiff's **fifth** cause of action, for violation of the Investment Advisers Act, is DISMISSED with leave to amend.

7. Plaintiff's **eighth** cause of action, for RICO violations, is DISMISSED with leave to amend.

8. Plaintiff's **twelfth, thirteenth, fourteenth,** and **fifteenth** causes of action, for common law fraud, are DISMISSED with leave to amend.

9. Plaintiff's **sixteenth** cause of action, for embezzlement, is DISMISSED WITH PREJUDICE.

10. Plaintiff's **eighteenth** cause of action, for violations of the Lanham Act, is DISMISSED with leave to amend.

11. Plaintiff's **nineteenth** cause of action, for violations of California Business & Professions Code § 17200 arising out of a securities transaction, is DISMISSED WITH PREJUDICE.

12. Plaintiff's **twentieth** cause of action, for unjust enrichment, is DISMISSED with leave to amend.

13. Plaintiff's **twenty-first** and **twenty-second** causes of action, for tort violations, are DISMISSED with leave to amend.

14. Plaintiff's Motion to Amend is GRANTED. Plaintiff shall have twenty-one (21) days from the date this Order is issued to file with the Court a Second Amended Complaint, no later than July 14, 2014, consistent with the terms of this Order and the amendments outlined in the Motion to Amend.

**IT IS SO ORDERED.**